IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| TERRY PYE | ) |
| | ) |
| v. | ) No. 1:20-cv-0010 |
| | ) |
| ANDREW M. SAUL | ) |
|     Commissioner of | ) |
|     Social Security | ) |

**To: The Honorable William L. Campbell, Jr., District Judge**

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 15), to which Defendant has filed a response. (DE 18.) Plaintiff has also filed a reply to Defendant's response. (DE 20.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 15) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for SSI on December 21, 2016 and an application for DIB on January 4, 2017. (*See* Transcript of the Administrative Record (DE 13) at 75-76.)[1] He alleged a disability onset date of October 15, 2015 and asserted that he was unable to work because of heart failure, diabetes, vision problems, and issues with memory and concentration. (AR 77.) Plaintiff's applications were denied initially and upon reconsideration. (AR 75-76, 107-10.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Dennis Reap on August 3, 2018. (AR 30.) The ALJ denied the claim on November 16, 2018. (AR 13-15.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 20, 2019 (AR 2-5), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since October 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cardiomyopathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] The Transcript of the Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme cold, extreme heat, and workplace hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 18, 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 18-24.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner

3

is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at

4

step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 18-24.)

### C. Plaintiff's Assertions of Error

Plaintiff presents three assertions of error: (1) that the ALJ failed to properly consider the opinion of his treating physician; (2) that the ALJ failed to properly weigh Plaintiff's allegations regarding the severity of his symptoms; and (3) that the ALJ relied on vocational expert testimony that did not adequately address all of Plaintiff's impairments. (DE 15-1 at 9.) Plaintiff therefore

5

requests that this case be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id.* at 18-19.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

**1. The Treating Physician's Opinion.**

Plaintiff first argues that the ALJ erred by according little weight to the opinion of his treating cardiologist, Dr. Amit Keswani, regarding the severity of his physical symptoms. An ALJ is required to give controlling weight to a treating physician's opinion only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[2] This provision – known as the "treating physician rule" – directs an ALJ who declines to give

---

[2] This regulation applies to social security claims filed before March 27, 2017 (*see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017)), such as the instant one.

6

controlling weight to a treating source opinion to provide "good reasons" for this decision that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011) (internal citation omitted).

In September 2017, Dr. Keswani completed a medical source statement ("MSS") in which he opined that Plaintiff is subject to numerous physical limitations caused by "acute/chronic systolic and diastolic congestive heart failure," hypertension, and "insulin dependent [diabetes mellitus]." (AR 802-03).[3] Dr. Keswani specifically found that, during an eight-hour workday, Plaintiff would be restricted to the following: occasional lifting of no more than 10 pounds; frequent lifting of no more than five pounds; no more than two hours of standing and/or walking, including no more than 30 minutes of standing/walking at one time; no more than four hours of sitting, including no more than two hours of sitting at one time; and occasional bending, stooping, balancing. (AR 802.)[4] Dr. Keswani additionally found that Plaintiff experiences "moderate" fatigue, would need to occasionally elevate his legs, and would miss three days of work per month (AR 803.)

The ALJ provided a brief justification for his decision to discount Dr. Keswani's opinion, stating only that the MSS "is not consistent with or supported by the evidence that largely shows the claimant with insignificant physical symptoms upon examination." (AR 22.) The ALJ did, however, include a parenthetical citation to a number of exhibits intended to bolster this finding. (AR 22.)

---

[3] The MSS includes a fourth diagnosis in the MSS that the Court is unable to discern, although office notes suggest that the condition in question is hyperlipidemia. (AR 774, 776.)

[4] "Occasional" is defined as "very little to one-third of the time," while "frequent" is defined as "one-third to two-thirds of the time." (AR 802.)

7

Plaintiff argues that this explanation does not satisfy the "good reasons" requirement of 20 C.F.R. § 404.1527(c)(2). Plaintiff accuses the ALJ of selectively considering the administrative record and ignoring evidence that demonstrates the severity of his symptoms. Plaintiff also faults the ALJ for failing to explicitly reference the various factors outlined in 20 C.F.R. § 404.1527(c) that the Commissioner must consider when weighing the opinion of a medical source.

It is true that the ALJ took no great pains to detail the reasons for rejecting Dr. Keswani's MSS, and that cursory explanations generally violate the treating physician rule because they prevent the subject claimant from receiving a meaningful explanation of why the treating physician's opinion has not carried the day:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.

*Wilson*, 378 F.3d at 544 (6th Cir. 2004) (citing *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)). Furthermore, the one reason provided by the ALJ – lack of consistency with the evidence – is far from optimal given that other courts in this circuit have found similar explanations to represent little more than boilerplate language that fails to fulfill the ALJ's regulatory duty. *See, e.g., Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) ("The ALJ's statement that the opinion was inconsistent with the record as a whole is precisely the type of vague language that the [Sixth Circuit] concluded was insufficient to permit meaningful review.").

However, there are other considerations that preclude a finding that the ALJ violated the treating physician rule in this case. Most prominent is Dr. Keswani's failure to set forth any support whatsoever – via narrative explanation, citation to objective findings, or otherwise – for the MSS

conclusions despite being prompted to do so. (AR 803.) The MSS instead consists entirely of "check-box analysis" and "rudimentary indications" without explanation, which renders the opinion "weak evidence at best" with respect to Plaintiff's condition. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (internal citations omitted). This alone forecloses a finding of reversible error based on the ALJ's discussion of Dr. Keswani's MSS. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 525 (6th Cir. 2014) ("A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.") (internal citation omitted).

The Court also notes that a treating physician's opinion may be discounted based on a single reason so long as that reason "reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source[.]" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Here, the ALJ's explanation, though minimal, addresses both the "supportability" and "consistency" of the MSS, which are relevant regulatory factors. *See* 20 C.F.R. § 404.1527(c)(3), (4). While the ALJ did not explicitly acknowledge Dr. Keswani's status as a cardiology specialist – another relevant regulatory factor – the ALJ accorded "significant weight" to a competing opinion provided by Dr. William Groh (AR 22), who is also a practicing cardiologist. Because both physicians are specialists with respect to Plaintiff's condition, the ALJ's weight allocation effectively neutralizes any application of this factor. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

9

Case 1:20-cv-00010    Document 21    Filed 02/02/21    Page 9 of 17 PageID #: 900

Finally, the Court notes that the exhibits referenced in the ALJ's discussion appear to include all four of Plaintiff's office visits with Dr. Keswani. (AR 22.)[5] In addition to arguably reaching another regulatory factor – length of treatment and frequency of examination, *see* 20 C.F.R. § 404.1527(c)(2)(i) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.") – these citations indicate that Plaintiff's treatment with Dr. Keswani yielded relatively mild physical findings. In December 2016, Plaintiff denied experiencing any limitations to his activity, shortness of breath, or anginal pain. (AR 455.) During this visit, Dr. Keswani also stated that he would not recommend any further treatment in light of Plaintiff's failure to comply with his medication regimen. (AR 456-57.) Plaintiff later reported shortness of breath with exertion in March 2017, but he exhibited no cardiovascular symptoms and stated that he was "doing better." (AR 650.) During his last documented appointment with Dr. Keswani, Plaintiff again demonstrated no cardiovascular abnormalities, no muscular weakness, and only "some" shortness of breath with exertion. (AR 773.)

Plaintiff points to multiple office notes to suggest that the ALJ "cherry-pick[ed]" the record to discredit Dr. Keswani's opinion (DE 15-1 at 11), although the evidence he cites fails to support this claim. For example, Plaintiff notes that he exhibited an increased heartrate in June 2016 (AR 380), yet this condition appears to have been temporary as Dr. Keswani documented a normal heartrate during each of his later appointments with Plaintiff. (AR 456, 657, 773, 777.) Plaintiff also cites atypical chest pain he experienced in June 2016 (AR 361), but Plaintiff specifically

---

[5] It is clear that the ALJ referenced Dr. Keswani's visits with Plaintiff on December 22, 2016, March 23, 2017, and September 27, 2017. (AR 22, 455, 650, 773.) The ALJ additionally cited "10F/8," which corresponds to a note signed by Dr. Keswani (AR 657), although the Court is unable to ascertain whether this note documents Plaintiff's fourth visit – occurring on January 23, 2017 – because the records from this exhibit are not presented in sequential order.

10

denied any chest pain during his last three visits with Dr. Keswani and throughout his treatment in 2018. (AR 773, 775, 778, 789-90, 794). As a final example, Plaintiff references a note from December 21, 2016 in which he reported that his prescribed diabetic medication, Metformin, was causing daily diarrhea. (AR 492.) However, it is unclear how the ALJ's failure to reference this particular notation demonstrates an unfair reading of the evidence given that this prescription was discontinued just two days later. (AR 516.) There is nothing to indicate that Plaintiff took Metformin after this transition, and Plaintiff identifies no other records suggesting that he experienced side effects from other medication. The Court thus declines to adopt Plaintiff's claim of unfair prejudice with respect to the ALJ's evaluation of the medical evidence. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir.2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

    The Court is not unsympathetic to the premise of Plaintiff's assertion of error in view of the ALJ's perfunctory discussion of Dr. Keswani's opinion. However, the Sixth Circuit has clarified that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), particularly when the subject physician's opinion includes no support for the conclusions included therein. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (even if ALJ's opinion violated good reasons requirement, treating physician's opinion that "provide[s] no supporting findings or records and consist[s] largely of one word answers, circles, and check-marks" is "patently deficient" and subject to harmless error review) (internal citations omitted). Moreover, Plaintiff identifies no evidence that meaningfully supports Dr. Keswani's deficient opinion and instead erroneously asserts that the ALJ was required to "explicitly consider" (DE 15-1 at 13) the

11

factors in 20 C.F.R. § 404.1527(c), which would contradict controlling precedent. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor."); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted). Accordingly, the Court finds that any violation of the treating physician rule in this matter represents harmless error and cannot serve as a basis for reversing the Commissioner's ultimate decision. For all these reasons, this assertion of error is rejected.

### 2. Credibility of Plaintiff's Allegations.

Plaintiff next argues that the ALJ erred by finding that his statements concerning the severity of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 21.) Plaintiff again accuses the ALJ of "cherry-pick[ing]" the evidence of record by focusing "[too] heavily" on records documenting Plaintiff's repeated noncompliance with treatment plans. (DE 15-1 at 16-17.) Plaintiff also emphasizes his hearing testimony regarding his struggle to perform certain daily activities because of his impairments, which, according to him, demonstrates the existence of a disabling condition.

When a claimant alleges the existence of disabling symptoms, the ALJ is required to follow a two-step process for evaluating these symptoms that was originally set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). The ALJ must first assess whether there is objective medical evidence of an underlying condition. If there is such evidence, the ALJ must determine: (1) whether objective medical evidence confirms the severity of the alleged pain arising

from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 853.

The Commissioner later adopted essentially the same standard in Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). The precursor to this ruling required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of his alleged symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). The Commissioner removed any reference to "credibility" in SSR 16-3p, although there appears to be no change to the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Courts therefore remain obligated to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), and claimants seeking to overturn the ALJ's decision continue to "face an uphill battle." *Daniels*, 152 F. App'x at 488.

Bearing this in mind, the Court finds that substantial evidence supports the ALJ's conclusions regarding the consistency of Plaintiff's allegations. Plaintiff's "cherry-picking" argument again finds no purchase in light of the ALJ's detailed discussion of medical evidence documenting normal musculoskeletal and cardiovascular findings throughout the record, in contrast to Plaintiff's claims of disabling symptoms. (AR 21.) The ALJ's reliance on office notes

13

indicating that Plaintiff has repeatedly failed to exhibit many of the alleged symptoms on which he bases his disability claim is entirely appropriate. *Shine v. Comm'r of Soc. Sec.*, No. 3:15-CV-1162, 2016 WL 4729303, at *7 (N.D. Ohio Sept. 12, 2016) ("Rather than 'cherry-picking,' this neutral comparison of record evidence … is well within the 'zone of choice' that the ALJ possesses in rendering disability decisions."). That Plaintiff can point to a handful of visits during which Plaintiff did report abnormal symptoms does not undermine the ALJ's determination regarding the overall presentation of his condition. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency … should have the opposite effect.").

Plaintiff's argument regarding his lack of compliance with treatment plans is similarly unpersuasive. Plaintiff's failure to take his medication as prescribed and refusal to attend scheduled appointments is well documented throughout the administrative record. (AR 318, 321, 326, 361, 365, 371, 455-57, 601.) It is perfectly within the ALJ's purview to base an adverse credibility finding on a claimant's noncompliance. *See Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014) ("Blaim's persistent noncompliance with his medication and his persistent disregard of his doctors' advice … suggested that his conditions were not as severe as he made them out to be."); *see also Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) ("The Court further notes that ALJ Roberts could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility."). Plaintiff contends that the ALJ improperly failed to consider valid reasons for failing to follow his medication regimen by again emphasizing the side effects of his diabetic medication, Metformin. (DE 15-1 at 16-17.) Even if this reason is accepted, however, the record indicates that Plaintiff's

14

noncompliance continued well after he stopped taking this medication in December 2016 (AR 773), and that Plaintiff separately failed to take hypertension medication as prescribed. (AR 361, 365, 370.)

Plaintiff's final point – that his daily activities "are not consistent with the ability to perform full time work" (DE 15-1 at 17) – does not actually address the ALJ's reasoning for the adverse credibility finding. Plaintiff relies exclusively on his hearing testimony in support of his position, yet such testimony is precisely what the ALJ found to be unreliable based on diagnostic and physical examination findings contained in the record. (AR 21.) Because the ALJ is in fact required to make such a comparison and account for any discrepancies, *see* 20 C.F.R. § 404.1529(c)(4) ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, a*nd we will evaluate your statements in relation to the objective medical evidence and other evidence*.") (emphasis added), the Court finds no error in this analysis.

The Sixth Circuit has not minced words with respect to the monumental burden a claimant must carry to overcome an ALJ's finding under SSR 16-3p: "While in theory we will not disturb an ALJ's credibility determination without a compelling reason … in practice ALJ credibility findings have become essentially unchallengeable." *Hernandez*, 644 F. App'x at 476 (internal citations and quotations omitted). The ALJ in this case reasonably found that Plaintiff's allegations regarding the severity of his symptoms were inconsistent with significant medical evidence in the administrative record. *See Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 312 (6th Cir. 2018) ("[B]ecause the ALJ's credibility determination was based on her comparison of the medical evidence with Joseph's testimony, we do not find that it lacked substantial evidence."). The Court thus rejects this assertion of error.

### 3. Vocational Expert Testimony.

Plaintiff's final assertion of error involves the testimony of the vocational expert ("VE") at the administrative hearing. As part of the Commissioner's burden at step five of the evaluation process, the ALJ is permitted to obtain testimony from a VE regarding a claimant's ability to perform work in the local and national economy despite any functional limitations. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). Testimony from a VE indicating that a claimant can perform other work in the national economy may constitute substantial evidence in support of an ALJ's determination that the claimant is not disabled if such testimony is given in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted). The hypothetical question need only include those limitations that the ALJ deems credible, *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990), as the ALJ "is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

Plaintiff's lone argument is that the ALJ improperly failed to adopt all of Dr. Keswani's proposed restrictions, which, as noted by the VE, would prevent Plaintiff from performing any work in the national economy. (AR 47-49.) As previously discussed, however, the ALJ was not required to accept Dr. Keswani's unsupported limitations in presenting hypothetical questions to the VE or formulating the RFC. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) ("In fashioning the hypothetical question to be posed to the vocational expert, the ALJ is required to incorporate only those limitations accepted as credible by the finder of fact.") (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Because

16

the Court has concluded that the ALJ's rejection of Dr. Keswani's opinion does not constitute reversible error, there is similarly no error in the ALJ's refusal to include Dr. Keswani's limitations as part of the hypothetical questions presented to the VE. This assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 15) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge